Our final case for today is United States v. Banks. Mr. Giffen. You may proceed when you're ready. Good morning and may it please the court. This case hinged on a traffic stop that was initiated in violation of the Fourth Amendment and that may have been prolonged in violation of the Fourth Amendment. Mr. Banks' motion to suppress should have been granted and the gun that was the only basis for his conviction under Section 922G should have been excluded from evidence. The clearest Fourth Amendment violation here was also the first one. Sergeant Rosenberry of the Decatur Police was following behind Mr. Banks on a residential street and he called in a traffic stop because he believed that Mr. Banks had activated his left turn signal less than 100 feet before the intersection. Not that he had failed the signal entirely, not that he had rolled through the stoplight, not that he had signaled after he turned, but that he had violated a technical traffic rule and one that does require the officer to make an empirical measurement of distance. Unlike more clear-cut all-or-nothing violations, here the officer had to parse the distinction between 105 feet, which is perfectly legal, and 95 feet, which may have been illegal. Sergeant Rosenberry was asked on cross-examination, he was asked again by the court in the suppression hearing, to provide any objective grounding or benchmarks against which his visual estimation could have been checked or grounded, but he couldn't do so. He couldn't say how far he was behind Mr. Banks' car. He couldn't say how many seconds he saw Mr. Banks' signal activated before the turn. He couldn't say how many blinks Mr. Banks' signal made, and he couldn't offer any kind of landmark, such as a house or a fire hydrant or a tree or anything, that he knew marked 100 feet from the intersection and that he could measure the violation against. A constitutional traffic stop requires officers to have at least a particularized and objective basis for thinking a crime has occurred or will occur. Another way of putting that, as the court put it in Ms. Lewis' case, is that the officer must have an objective basis for his reasonable belief that the violation occurred. Mr. Giffen, I thought I saw something in the record about whether or not the middle of that block was on top of a hill going downward. Do you know what the topography of that area was? I believe that the entire double block is sloping downhill, so I don't think there's anything in the record indicating that there's a hump in the middle. So from the first cross street down to the corner where Mr. Banks turned left, that was all going downhill? That was Sergeant Roseberry's testimony, yes. So how does a court determine whether that constitutional minimum has been met when its only source is an officer's account? The case law shows that the degree of required objective indicia supporting an officer's say-so will vary based on how much objective support the type of offense requires. Are you asking us to make a credibility determination? The district court certainly framed it as a credibility determination. I would argue that what we're really talking about here is not necessarily credibility, but whether the required minimum of objective basis has been met, which is an application of the legal standard. All right, and so looking at the credibility question, when the officer testified, what was the findings of the district court? The district court said that it was troubled by Sergeant Rosenberry's lack of recollection, lack of objective basis. I believe the district court described it as... The court found he lacked an objective basis for the traffic stop? He did not say that explicitly. What he said was that he was troubled by the officer's lack of recollection. I was asking not for the conclusion, but what were the facts? The district court didn't find very many facts. It was an oral ruling. But he did say that he found the officer's account to be credible, and he said that the lack of recollection of objective indicia may have indicated that he was being truthful. And I wouldn't disagree with that. That's why I don't think this is really about credibility. This is about does what the officer said, taken as true, have any kind of objective nexus to what's necessary for that objective basis? I don't think there was. I think the distinction between the types of stops, reading the case law, is important here. An officer's uncorroborated recollection may be enough if an offense is just a matter of seeing it. Was the officer there? Did he see it? That would be failure to signal entirely. That would be blowing through a stoplight. In U.S. v. Correa, which both the cases cited in their briefs, the officer said he didn't see the defendant turn without signaling at all. There was no signal, and the defendant testified that he did, in fact, signal. That was a credibility he said versus she said. The district court found that the officer was more credible, and that was that on deference to credibility. Can I ask you about the prolonging aspect of your argument? As I understand it, at some point, Mr. Banks gets out of the car to try to make some calls to try to obtain the information with regard to his insurance. Then somewhere along the line, Officer Ganley speaks to him about the car and who this car belonged to, etc., etc., etc. We know that from the record. Do we have anything else from the record that would tell us whether or not Officer Ganley's questions interrupted Mr. Banks' efforts to try to obtain that information or what Mr. Banks was doing during that time? How long did that questioning last, or was Mr. Banks still on the phone when he was being asked those questions? Do we have anything that would indicate more precisely what exactly took place there? We don't. We have, I think, two pieces of circumstantial evidence. One is that Officer Morey testified that he thought that Officer Ganley, when he was talking to Mr. Banks, that Mr. Banks was still working on the insurance issue. We also have a photograph that was put into evidence that does show Mr. Banks on the phone, so we know that he was on the phone at some point. We don't know whether Officer Ganley's questioning interrupted or prolonged what he was doing or whether it's possible that he was on hold with the insurance company and the questions were just while he was on hold and there was no prolongation. We don't have facts sufficient to support that determination. Do we know factually if it had been once the K-9 went around the Pontiac, whether or not Mr. Banks had demonstrated that he had proof of insurance? He had not, well I should say that they had not closed out the stop yet. Officer Morey hadn't finished writing the ticket and he testified that he was waiting to find out the insurance status before he determined which or how many tickets he was going to write Mr. Banks. I'm just asking factually, what did the district court find below? Did the district court find below that Murray was still waiting or did he find that that question had been answered and Murray was deciding how many tickets to write? The district court did not get into that level of detail. The district court said in I think a matter of two or three sentences in the oral ruling that essentially it found that the dog stop did not prolong the stop or the dog sniff did not prolong the stop and that was as much detail as the district judge got into. To return to the question of credibility and objective basis for a moment, the Fifth Circuit found in its Lopez-Valdez case that I think is language that's relevant here that there is great potential for abuse in sort of the flip side of the U.S. v. Wren principle. It's been subtle law for a long time now that if there is an objective basis, if there is objectively based probable cause for a traffic stop, then the subjective intentions of the officer making the traffic stop don't enter into it. The flip side of that is there does have to be an objective basis. Otherwise there's a pretty big loophole that officers can crawl through to use pretext as essentially a license to pull somebody over on an unfalse appliable basis at any time. And we would argue that the 100 foot turn signal violation is custom made for that kind of abuse because it is so technical and because if a court is going to credit an officer's eyeballing of a distance like that from the following distance of an indeterminate length, officers can essentially offer their subjective view of what happened and pass a test that's intended to be objective in its basis. And I'd like to reserve, unless there's any questions, a little bit of time for rebuttal. Very well. Thank you. Mr. Lynch, go ahead. May it please the court. William J. Lynch, appearing on behalf of the United States in this appeal. This defendant was caught with a gun that he thought he had well hidden in his vehicle and he now contests almost the entirety of his proceedings but for his below guideline sentence. This court should affirm that the defendant was caught with a gun that he thought he had well hidden in his vehicle and he now contests almost the entirety of his proceedings but for his below guideline sentence. We should affirm the district court's findings that probable cause existed for the traffic stop, that the stop was not unlawfully prolonged while a canine was used, that the search of Banks' vehicle was supported by probable cause via the canine alert, and that sufficient evidence exists to support a conviction in this case. Turning first to the traffic stop, the violation at issue is failure to signal within 100 feet of making a turn and the district judge's ruling in this case was thorough. The district judge parsed the credible testimony it had before it and applied it against several different standards. The court said if this was a trial, the court would have likely found him not guilty if this was a traffic bench trial. However, the court did find that the officer's credible testimony supported a finding of probable cause. The court distinctly used the term probable cause which is a standard higher than what is required in this instance which would only be reasonable suspicion. Counsel, can you direct me to the facts that he did find? Particularly, I'm looking at the transcript docket one of the motion to suppress the same question that I posed to counsel. Yes, Your Honor. Regarding the traffic stop, the court found in reference to its oral ruling 125-87-87 that the officer gave background testimony related to the defendant's pretext issue they've raised. He found that Sergeant Rosenberry drove that same street virtually every shift that he worked, that there was some lighting, that lights did work, and that the observation was that it was less than 100 feet. Those are the functional facts that Judge found and then he went on to analyze it under the applicable standard before him. So that was the reason that he found him to be credible? The reason that he found him to be credible placed in context of the questioning that proceeded throughout the entirety of the hearing was that Sergeant Rosenberry was thoroughly cross-examined by both defense counsel and the court invited him to comment on three different occasions and three different questions to supply more of his observations that he recalled, this being a year and a half after he observed the violation. What more he remembered about the distance between him and the vehicle when he observed the violation. And Sergeant Rosenberry was consistent the entire time. He said we were in the 1100 block together and he recalled that he saw the violation. He was unable to give the number of car lengths, the number of blinks he saw. He did recall that the turn signal was applied at one point. And so those are the, in context when Judge Mint found that the lack of specificity, as has been illustrated in the briefs, it's in the context of the court asked him three times in a row, three questions right in a row, and he didn't invent any answer he didn't already give. This is an officer who has been in law enforcement for at least 15 years and he's being asked on cross-examination from several different individuals, what else do you recall? And the officer was consistent about his memory. And Judge Mim, in the context of the applicable standard, determined that to be indicative of his credibility, that he was truthfully testifying to something he reasonably believed that he saw. The defendant in his reply brief attempts to point out a significant mathematical error. The government contends there was no such error to the level that the defendant identifies it as. Rather, the officer's testimony, Sergeant Rosenberry's testimony in relation to Exhibit A in the briefs, is that that highlighted portion of East Clay Street actually encompasses the 1000 block and the 1100 block together. He further explained that the 1000 block is before the marker on that exhibit and the 1100 block is after that marker. The 1100 block he gave as, quote, approximately the length of a football field, being 300 feet. And the defendant's reply brief points out that the entire double block is listed as being approximately 528 feet, a tenth of a mile. So describing the 1100 block, the exact place where they were together, is not so great a mathematical error to call into question Judge Mim's credibility finding as to Sergeant Rosenberry's observations and recollections, especially when the defense has pointed that out in the context of Sowers, where that officer had fundamental misunderstandings about objective measurements in real life. Moving on to the prolongation argument, there was no unlawful prolongation in this matter. The entire process was reasonable, and the district court found that in this four minute time span from when the officers first conducted the traffic stop to when the canine did arrive and alert, it was approximately four minutes. In this time, officers had discovered not only the initial traffic violation, but also had facts before them that he may be committing a new violation, a second violation, an insurance violation on top of the initial observed violation. And Judge Mim indicated that the record was clear on this, that it was a proper ongoing investigation at this time. Moving on to the canine alert, I'll simply point out that the record is very clear, that Detective Warner testified the certified canine in this particular case did alert on the defendant's Pontiac and did also... More so whether or not this canine search prolonged the traffic stop. So what do we know factually? Factually, we know that the time span we're working with is about four minutes, that officers had discovered a new potential violation of law, that being the insurance violation, that defendant banks had been given the opportunity to make calls to determine if valid insurance did exist, and that that was still ongoing. Now, the testimony of Officer Ganley that was brought up earlier, that came out at trial, it was not elicited at the suppression hearing, and Judge Mim's finding at the suppression hearing is sufficient based on this record, and this court can affirm him on that. The defendant did try to re-raise it again in some fashion in his motion for new trial, but simply put, it's a very clear ongoing stop, and Judge Mim compared this to an instance where the canine arrives and everything had already been completed. That was part of his ruling below. Finally, I encourage the court to find that sufficient evidence exists to sustain a conviction in this case. Before we get into that, the defendant argues that he sufficiently preserved the Rule 29 argument by incorporating or making a sufficiency argument in the motion for a new trial. What's the government's position with regard to that? Your Honor, in the government's brief, we've taken the stance that the defendant did not preserve it. The motion was made at the conclusion of the government's case in chief. The motion for new trial did talk about sufficiency of the evidence, but if you read the motion for new trial, it nowhere asks for acquittal. It strictly asks for new trial, which is a distinct remedy the defendant's asking for. Under any standard, the defendant faces nearly insurmountable showing that he must show to demonstrate that evidence was lacking here. The jury heard that he was the sole occupant of a car that was registered in his name. He admitted to Officer Ganley the car was his, that it was rare for others to drive. It was registered to him. Documents were found inside of a personal nature, that being a W-2 tax form as well as an ISP written warning. And then, of course, the gun was found in a hidden compartment in the vehicle. The defendant also was able to adduce at trial his defense that a person by the name of Jessica Jones at Johnson had driven the car recently before him. The jury was invited by defense counsel during closing to accept that the gun was this person's or it had been potentially placed there in a setup, and the jury rejected that. Those were both points made in the defense closing, which the jury rejected. And so on those facts, the government believes that sufficient evidence exists in this case to support a conviction. If there are no further questions, I yield my time. Thank you. Thank you. Mr. Giffen, we'll give you two minutes. Thank you. I want to return to the distinction, which I think is critical here and that counsel for the government brought up as well, the distinction between the credibility of Sergeant Rosenberry's testimony and whether that testimony had an objective basis. The factors that Judge Min cited below, the fact that Sergeant Rosenberry had a background and extensive history, that he was familiar with the general area, that there was decent lighting on the street, although it was night, and that he could see taillights, those are relevant to, potentially to his credibility as to whether he could see anything at all or whether, if there was a violation, he could observe it. I argue that they're not relevant to the question of whether there was an objective basis for his legal conclusion that the traffic violation occurred, the 100-foot violation occurred. That gets to a distinction recognized in Sowers as well, where the court said in the context of speeding, if it's a clear case, if somebody's going 25 on the interstate or they're going 120 on the interstate, the officer can eyeball it. That's not a problem. But when you're talking about fine parsing of the line between legal and illegal, it is reasonable to require, and the Fourth Amendment arguably requires under Sowers' language that there must be some sort of particularizing objective basis for that determination. And Sergeant Rosenberry may have been very credible in saying, I just don't remember, but he couldn't offer the court, he couldn't offer us anything on which to hang that determination other than I was there. And he lapsed into kind of the circularity of saying, well, I just reasonably believed it. That was his final comment. The officer's assertion that it was reasonable is not itself evidence of reasonableness. Thank you very much, Mr. Griffin. Thank you, counsel, for your arguments today. We'll take the case under advisement. That concludes our arguments for today. Thank you very much. Court is in recess.